2002 ME 104

## EQUITY PORTFOLIO LLC, LTD

v.

## Robert J. SCHRIEVER et al.

Supreme Judicial Court of Maine.

Submitted On Briefs: March 26, 2002.

Decided: June 26, 2002.

James L. Audiffred, Esq., Saco, for the plaintiff.

Mark A. Kearns, Esq., Wells, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Robert Schriever appeals from a judgment of the Superior Court (Franklin County, *Mullen, J.*) that the court clerk had not erred in renewing a writ of execution in favor of Equity Portfolio pursuant to 14 M.R.S.A. § 4653 (1980).[1] Schriever contends that the court did not have subject matter jurisdiction to renew the writ of execution because the prior writ had not been properly returned to the clerk. Equity contends that the court did not err, and in the alternative, that a 2001 amendment[2] to section 4653 should be applied retroactively. We agree the court did not err, affirm the court's decision, and thereby need not address Equity's latter contention.

## I. BACKGROUND

[¶ 2] In 1995 a Massachusetts court entered a default judgment against Robert Schriever (and R.J. Schriever Company) and in favor of Shawmut Bank on a complaint to collect money owed on a promissory note; the principal and interest on the note, plus attorney fees, comprised the amount of the judgment of $175,198.79. While Schriever is a Massachusetts resident, he and his wife own a home on the shore of Rangeley Lake. In January 1998 Equity obtained a non-recourse assignment of the judgment and transferred the judgment to Maine pursuant to the Uniform Enforcement of Foreign Judgments Act. *See* 14 M.R.S.A. § 8003 (1980).[3]

[¶ 3] Equity sought judicial enforcement of the money judgment via a writ of execution, which permits the county sheriff to seize and sell the debtor's property. On May 29, 1998, the Franklin Superior Court issued the writ of execution[4] to be executed within three years; Equity notified Schriever that the writ had been filed in the registry of deeds.[5] The writ lay dormant for three years and two weeks because during this time Schriever contested a disclosure proceeding for lack of personal jurisdiction, filed for bankruptcy (the petition was eventually dismissed), and again convinced the court that he could not be compelled to appear in Maine by a subpoena that had been served in Massachusetts.

[¶ 4] On June 15, 2001, when the Franklin County Sheriff's Department published a notice of sale of the Rangeley real estate and scheduled a public auction, Equity re-

---

1. Section 4653 provides: "An alias or pluries execution may be issued within 10 years after the day of the return of the preceding execution and not afterwards."

2. Section 4653 as amended provides: "An alias or pluries execution may be issued within 10 years after the day of issuance of the preceding execution and not afterwards." 14 M.R.S.A. § 4653 (Supp.2001).

3. Section 8003 provides:

   A copy of any foreign judgment authenticated in accordance with the Act of Congress or the statutes of this State may be filed in the office of the clerk of any District Court or of any Superior Court of this State. The clerk shall treat the foreign judgment in the same manner as a judgment of the District Court or Superior Court of this State. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of the District Court or the Superior Court of this State and may be enforced or satisfied in like manner.

4. The court added the post-judgment interest of $77,111.47 for a total of $252,310.26.

5. Currently, filing the writ of execution in the registry creates a "[l]ien on real estate." 14 M.R.S.A. § 4651–A(1) (Supp.2001). Enforcement of the lien is done in accordance with section 3131. *Id.* § 4651–A (7). Section 3131 provides the procedure for a "turnover order" or sale. *Id.* § 3131 (Supp.2001). This proceeding must be commenced in the division where the nonresident debtor is "commorant." *Id.* § 3121–A(1)(B) (Supp.2001).

alized the original writ of execution had lapsed by two weeks and asked the clerk of the Franklin Superior Court to renew it.[6] The clerk complied on July 31 by writing out a renewal writ (also called an "alias" writ), but Schriever contested the act, arguing that the clerk had no record of the original writ being returned on or before May 29, 2001, (three years after the initial issuance) as 14 M.R.S.A. § 4651 requires.[7] Equity argued that a "return" of the writ would have been redundant because the clerk of the Superior Court had the original writ of execution in its possession.

[¶ 5] In mid-August the clerk issued the renewal writ notwithstanding Schriever's objection. As the sheriff's department published a notice of sale of the Rangeley property, Schriever moved for relief from a clerical mistake in the writ. Schriever moved to stay the sheriff's sale, and in September Equity asked the Superior Court to sanction the renewal writ.

[¶ 6] The Superior Court decided that although Schriever opposed the writ because the clerk had no record of the original writ being returned, "[i]n point of fact, the original writ of execution **never** left the file; apparently it is common practice among the clerks of court of this state to issue **attested copies** of writs of execution to those seeking a writ"; and the case of *Strout, Payson, Pellicani, Hokkanen,*

*Strong & Levine v. Barker,* 2001 ME 28, 765 A.2d 994, "is distinguishable" from Schriever's situation because in Schriever's case there is no question that the original writ remains unsatisfied.

[¶ 7] Thus the court concluded:

Despite the fact that the statute is to be 'strictly construed' ... common sense should not be checked at the doorway to the courthouse. The judgment has not been satisfied ... In this case, where the creditor's counsel has returned to the Clerk's Office what the Clerk provided to him in the first place in the way of a writ of execution, imperfect as it may be, and the debtor is not arguing that some/all of the judgment has been paid, the Court finds an alias writ of execution should be issued.[8]

Schriever appealed to this Court.

## II. DISCUSSION

[¶ 8] The applicable version of section 4653, before its amendment in 2001, provides:

**Renewal in 10 years**

An alias or pluries execution may be issued within 10 years after the day of the return of the preceding execution and not afterwards.

14 M.R.S.A. § 4653 (1980).[9]

[¶ 9] Schriever contends that the court lacked authority to render a renewal writ

---

6. Equity has not argued that the institution of bankruptcy proceedings tolled the running of the three-year period, and we do not address that issue here.

7. Section 4651 provides:
   Executions may be issued on a judgment of the Superior Court or the District Court after the judgment has become final by the expiration of the time for appeal, by dismissal of an appeal or on certificate of decision from the law court, unless the court has pursuant to rule ordered execution at an earlier time, and are returnable within 3 years after issuance.

14 M.R.S.A. § 4651 (Supp.2001) (last amended in 1995, when it extended the time that executions are returnable from one year to three years after issuance).

8. The court additionally denied Schriever's motions to correct a clerical mistake and stay the sheriff's sale.

9. Section 4653, as amended, provides: "An alias or pluries execution may be issued within 10 years after the day of issuance of the preceding execution and not afterwards." 14 M.R.S.A. § 4653 (Supp.2001).

of execution because the "return" of the original writ did not meet the statutory requirements; the condition precedent of the sheriff's indorsement must be on the returned writ to trigger the power of the court to renew it.

[¶ 10] Our recent case concerning compliance with the statutory pre-requisites to renew a writ of execution, *Strout*, 2001 ME 28, 765 A.2d 994, applied section 4653 before its amendment. Schriever primarily relies on *Strout* to advance his argument.

[¶ 11] In *Strout*, nearly a decade had passed since the initial writ of execution; some property had been sold to satisfy the default judgment, but the sales had not been recorded, nor had the original writ been returned to the court. *Id.* at ¶¶ 2–3, 765 A.2d at 995. The plaintiffs filed a motion to renew the writ, asserting that part of the judgment remained unsatisfied; the defendant objected that the original amount subject to execution had been satisfied in full. *Id.* at ¶ 3. We held that the issuance of the alias writ had been in error because "[t]here is nothing in the record establishing Strout & Payson's return of the original writ. Neither the presence of the document nor a docket entry indicate its return." *Id.* at ¶ 8, 765 A.2d at 996.

[¶ 12] The facts in *Strout* are distinguishable from Schriever's situation; a return of the original writ in *Strout* was particularly important because some property had already been sold, and a proper return would have indicated what had been sold in the ten years since the original writ to satisfy the judgment. *See generally* 30 AM. JUR. 2D *Executions & Enforcement of Judgments* § 295 (1994) ("The purpose of a return is to establish ... that the officer has performed the official acts essential to an effective levy.... The filing of the return is a ministerial act and it does not change the debtor's position."). A return would have ensured that the

defendant's property had not been improperly levied and sold.

[¶ 13] These concerns are not present in this case. Here, the copy of the execution that issued was returned on July 11, 2001, at the time Equity requested an alias writ. The sheriff's notes returned with the copy confirm that no property had been levied. Schriever does not argue that the debt has been satisfied and there is no question that the original writ remains unsatisfied. The Superior Court correctly distinguished *Strout*, and reached an entirely equitable result.

The entry is:

Judgment affirmed.