STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, ss
CLERK'S OFFICE

2009 MAY 20 A 11: 54

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-08-589

MACIMAGE OF MAINE LLC,

Plaintiff,

v.                                                      ORDER

HANCOCK COUNTY, et al.,

Defendants.

Plaintiff MacImage of Maine LLC is seeking access under the Freedom of Access Law to the electronic database containing documents recorded at the Hancock County Registry of Deeds without having to pay the $1.50 per page fee imposed by the County. Because the County recently blocked access to MacImage's ability to obtain even unofficial copies, MacImage is seeking a preliminary injunction pending trial. Hancock County opposes this application and is seeking a preliminary injunction of its own forbidding MacImage from what it characterizes as hacking into its database.

The court has reviewed the affidavits and memoranda submitted by both parties.

Hancock County initially imposes a fee for recording documents (currently $16 for the first page and $2 for each additional page) and thereafter imposes a fee of $1.50 per page for copies of recorded documents.[1] It is the court's understanding that Hancock County's system of providing access to its recorded land records and the fees it imposes for copies is similar to that found in other counties. This case therefore may constitute a test case with respect to the application of the Freedom of Access Law to records for which county registries have historically charged fees.

---

[1] Other charges are imposed for such things as plans, index searches above a certain number of names, and certifying documents.

1. Likelihood of Success on the Merits

Of the four criteria that must be considered on a motion for a preliminary injunction, the court will first consider whether MacImage has demonstrated that it has demonstrated the requisite likelihood of success on the merits of its Freedom of Access claim. *See Bangor Historic Track Inc. v. Department of Agriculture*, 2003 ME 140 ¶ 9, 837 A.2d 129, 132.

> The Freedom of Access Law defines "public records" in pertinent part as:

> > any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, that is in the possession or custody of an agency or public official of this State or any of its political subdivisions . . . and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business . . . .

1 M.R.S. § 402(3) (emphasis added).

The database maintained by the Hancock County Registry of Deeds is an "electronic data compilation" that falls within the definition of "public records" contained in § 402(3). Under 1 M.R.S. § 408(1) every person has the right to inspect and copy any public record within a reasonable period of time after making a request.

Hancock County argues that it is not denying access to MacImage because, although it will not permit MacImage to copy its database as a whole, it will allow MacImage to copy any individual page within the database for $1.50 per page. However, because the definition of public records includes an electronic data compilation as a whole, not just individual records within that compilation, the court interprets the Freedom of Access Law as requiring the County to allow MacImage to copy the database and not just individual records.

The remaining question is the cost. Under the Freedom of Access Law, the custodian of a public record may charge "a reasonable fee to cover the cost of copying." M.R.S. § 408(3)(A).[2] MacImage points out that a vice president of Aptitude Solutions, the company that provides the database software and the website for the Hancock records, has testified that the database and website could be configured to allow MacImage and others to access the database as a whole ("access in bulk") at no extra charge to the County. McGrath Dep. at 57-59. Since the cost of copying is therefore zero, MacImage argues it should be entitled to access to the database at no extra charge.[3]

The County, however, counters that there is a separate statutory provision governing fees for copying registry records. Specifically, the County relies on 33 M.R.S. § 751, which provides as follows:

> Except as provided in any other provision of law, registers of deeds shall receive the following fees for:
>
> * * *
>
> 14. Abstracts and copies. Making abstracts and copies from the records, a reasonable fee as determined by the county commissioners . . . .

The County argues that this provision is designed to allow county registries to impose fees not just for the cost of copying but also for the costs of establishing and maintaining the registry and the database. The court has some sympathy for this argument. However, on the present record, the court nevertheless finds that MacImage

---

[2] Under the Freedom of Access Law, a public agency may also charge a fee to cover "the actual cost of searching for, retrieving, and compiling the public record of not more than $10 per hour after the first hour of staff time per request." 1 M.R.S. § 408(3)(B). In this case, however, the database has already been compiled and no staff time is necessary for search and retrieval.

[3] MacImage is a registered user of the County website. The record does not reflect whether it has paid any fee to register.

has demonstrated that it is likely to prevail on the merits of its Freedom of Access claim. This is true for three reasons.

First, the most obvious way to reconcile 1 M.R.S. § 408(3)(A) and 33 M.R.S. § 751(14) is to interpret the reasonable fee called for in § 751(14) as a reasonable fee to cover the cost of copying as set forth in the Freedom of Access Law. Second, to the extent that § 751(14) is interpreted as differing from § 408(3)(A), Section 751 expressly provides that it yields to other applicable statutes ("except as provided in any other provision of law . . . "). As a matter of statutory construction, therefore, it is arguable that § 751(14) would yield to the provisions of § 408(3)(A).

Finally, even if § 751(14) were interpreted as a free-standing exception to the "cost of copying" provision in the Freedom of Access Law, the County has not demonstrated on this record that the $1.50 per page that it charges is "reasonable." It may be that the revenue generated from recording fees, from certification fees, and from single users requesting copies is insufficient for the Registry to finance its recording functions, its staffing needs, its database and computer costs and that therefore an additional bulk access fee would be reasonable for the bulk access requested by MacImage. However, the County declines to offer any bulk access fee whatsoever, and it has not demonstrated that its per page copying fee is reasonable when bulk access is requested.

Given the above, the court need not decide whether, even if the County were able to establish the reasonableness of its fee given the overall cost of maintaining the registry and its database, the Freedom of Access Law would limit any permissible fees to copying costs. On the existing record, MacImage has demonstrated that it is likely to prevail on the merits.

2.     Other Criteria for a Preliminary Injunction

In addition to a likelihood of success on the merits, the remaining criteria for a preliminary injunction are ordinarily (1) that irreparable injury will be inflicted on the plaintiff in the absence of an injunction; (2) that such injury outweighs the harm inflicted on the other party if an injunction is granted; and (3) that there will be no adverse effect on the public interest. *E.g., Bangor Historic Track Inc. v. Department of Agriculture*, 2003 ME 140 ¶ 9, 837 A.2d at 132; *Ingraham v. University of Maine*, 441 A.2d 691, 693 (Me. 1982).

In this case, however, where the Freedom of Access statute expressly authorizes injunctive relief ordering disclosure of public records, 1 M.R.S. § 409(1), irreparable harm need not be shown and there is no need to balance the equities. *See, e.g., State v. Sirois*, 478 A.2d 1117, 1121-22 (Me. 1984). Nevertheless, MacImage has made a showing that its financial viability may be at risk if an injunction is not granted, *see* Simpson Affidavit, sworn to April 23, 2009 ¶¶ 53-54, and this would be sufficient to satisfy the necessary showings with respect to irreparable harm and the balance of equities even if the Freedom of Access Law did not make those showings unnecessary. Moreover, the dispute here does not involve the confidentiality of specific records – as to which an injunction (unless stayed pending appeal) will result in disclosure and will effectively moot any further proceedings. In this case the dispute is whether MacImage will be allowed bulk access to the database pending trial.

Finally, once it has been determined that the Freedom of Access Law applies, then the Freedom of Access Law also establishes that disclosure is in the public interest. This balance could be drawn differently by the Legislature, which would be entitled to conclude that Registries of Deeds should be exempted from the Freedom of Access Law or that a different cost structure should govern copies of records from those registries.

Under the Freedom of Access statute as it stands, however, companies requesting public records for commercial purposes have just as much right to invoke the Freedom of Access Law as citizens seeking governmental information. On the public interest criterion, existing law strikes the balance in favor of disclosure.

### 3. Hancock County's Request for Injunctive Relief

On the existing record, the court does not find that the County has demonstrated that MacImage has engaged in any unauthorized hacking of its website, nor does it appear that the County has demonstrated that there is a basis to expect any hacking in the future. *See* Simpson Affidavit sworn to April 23, 2009 ¶¶ 38-40; Simpson Affidavit sworn to May 12, 2009 ¶¶ 9, 23-25, 28-29, 34-38. Accordingly, the County's motion for a TRO and preliminary injunction is denied.

### 4. Official v. Unofficial Copies

There is one additional issue – whether MacImage is entitled to copies of the records that do not bear a notation that they are unofficial copies. The Registry is the official repository of records concerning land transactions in Hancock County, and there can only be one official repository. The court does not find that the Freedom of Access Law allows MacImage to download the Registry's records in a fashion that would allow it to maintain an identical database that users would be unable to discern was not the official database.

In the past MacImage has obtained copies of records from the Hancock County Registry that contained a watermark identifying them as unofficial copies. There is an issue as to whether those watermarks obscured some of the content in the documents. It is also unclear whether MacImage's website contains a disclaimer that the Hancock

Registry is the official source of recorded documents and that the Hancock Registry controls in the event of any discrepancy or whether MacImage attaches such a disclaimer to any search results provided.

In the absence of such a disclaimer, it is the court's view that Hancock County must afford bulk access to MacImage but may provide copies marked as "unofficial" so long as that marking does not obscure the content of any document.[4] In the court's experience, this is the kind of issue whose resolution could require additional time and further submissions to resolve. This order is not intended to constitute an invitation to delay in allowing access. Accordingly, Hancock County is ordered to allow bulk access to MacImage immediately – either by turning on the "automated export" function in its software or otherwise. Once it has done that, counsel may explore whether MacImage has an appropriate disclaimer and whether the County should instead affix a notation that the copies are unofficial.

Finally, given the requirement of public access in the Freedom of Access Law and MacImage's showing that bulk access can be afforded at no additional cost to Hancock County, MacImage shall not be required to post any bond in order to obtain this injunction.

The entry shall be:

Plaintiff's motion for a preliminary injunction is granted. Pending trial, defendant Hancock County is ordered to provide bulk access to records contained in its registry of deeds database to MacImage of Maine LLC at no additional cost. Once access has been provided, the parties can explore whether MacImage attaches a

---

[4] MacImage argues that its site is at least as reliable as the County's and easier to use. If so, then there will be a reason for users to patronize the MacImage site even though it is unofficial.

disclaimer to any search results or documents provided to customers of its website that the official registry of recorded documents maintained by Hancock County controls in the event of any inconsistency. If not, Hancock County may affix a notation or watermark to those records so long as that notation or watermark does not obscure the contents of any document. In the event there is a dispute as to the implementation of this order, either party may propose a more detailed order after providing a copy to the opposing party.

Defendant's motion for a TRO and preliminary injunction is denied.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     May _20_, 2009

Thomas D. Warren
Justice, Superior Court

MACIMAGE OF MAINE LLC VS HANCOCK COUNTY ET ALS
UTN:AOCSsr  -2008-0116404                        CASE #:PORSC-CV-2008-00589
------------------------------------------------------------------------------
SEL VD                                   REPRESENTATION TYPE       DATE
01 0000008549 ATTORNEY:SCHUTZ, SIGMUND D
ADDR:ONE CITY CENTER PO BOX 9546 PORTLAND ME 04112-9546
     F FOR:MACIMAGE OF MAINE LLC                 PL          RTND   10/15/2008


02 0000009024 ATTORNEY:PELLEGRINI, ANTHONY D
ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401
     F FOR:HANCOCK COUNTY                        DEF         RTND   11/14/2008
     F FOR:HANCOCK COUNTY COMMISSIONERS          DEF         RTND   11/14/2008
     F FOR:JULIE A CURTIS                        DEF         RTND   11/14/2008




          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.

STATE OF MAINE                                        SUPERIOR COURT
CUMBERLAND, ss.                                       CIVIL ACTION
                                                      Docket No. CV-08-589
                                                      TDW - CUM - 9/3/2009

MACIMAGE OF MAINE LLC.,

        Plaintiff,

                                                      ORDER

HANCOCK COUNTY, et al.,

        Defendants.


        A non-jury trial on plaintiff's lawsuit under the Freedom of Access Law was held

on July 14-15, 2009.

        The court finds as follows, based where stated on the stipulated facts and

exhibits and otherwise on the testimonial evidence presented at trial:

    1.  On September 29, 2008 plaintiff MacImage of Maine LLC made a Freedom of

        Access request which is contained in the record as Joint Exhibit 1.

    2.  On October 7, 2008 defendants (collectively, Hancock County[1]) responded to

        that request as set forth in Joint Exhibit 2.

    3.  On October 15, 2008 the Hancock County Commissioners convened a special

        meeting at which they set the fees for obtaining copies of recorded documents

        for the Hancock County Registry of Deeds at $1.50 per page, as set forth in

        Joint Exhibits 4-6 and 12-13.

---

[1] Named as defendants are Hancock County, the Hancock County Commissioners (sued in their official capacity only), and the Hancock County Register of Deeds (sued in her official capacity only). The parties agree that the naming of the Commissioners and the Register in their official capacities is only for the purpose of ensuring that all of the relevant entities of the county will be bound by any judgment.

4. Previously the fees charged by the Hancock Registry for copies of recorded documents were $1.00 per page for copies provided at the Registry and $1.50 per page for copies provided online.

5. MacImage is seeking to obtain updated copies of all documents recorded at the Hancock County Registry in order to make those documents available for a fee on the MacImage website to persons who are performing title and lien searches with respect to real property in Hancock County. MacImage currently offers users of its website copies of documents from the Hancock County Registry at $.75 per page, a cheaper price than the per page charge imposed by Hancock County. Stipulation ¶¶ 14, 30. MacImage also contends that its website is easier to use than the County's (an issue as to which the court makes no finding) and that since documents recorded at the Hancock Registry are public documents, it should be able to obtain these documents under the Freedom of Access Law and is entitled to provide those same documents for a fee if customers are willing to pay for the services it provides.

6. Hancock County does not provide bulk access to documents at a reduced fee either at the Register's office or on the County website, but imposes the same $1.50 per page fee no matter how many documents or pages are requested.

7. Hancock County maintains copies of documents recorded at the Registry since January 1, 2006 solely in digital format. Originals are returned to the person who recorded them. The documents recorded are scanned and the scanned images are indexed and stored in a digital format. The index information is also stored digitally in a computerized database. Stipulation ¶¶ 9-10, 13.

8. Official copies of documents recorded prior to January 1, 2006 are maintained in both traditional paper format and in digital format. Stipulation ¶ 13. Grantor/Grantee indexes covering both the time period prior to January 1, 2006 and after are maintained in traditional paper format and digital format. *Id.*

9. There is no dispute that documents recorded at the Hancock Registry and grantor/grantee indices maintained by the Registry constitute public records within the meaning of the Freedom of Access Law. The digital information maintained by the Hancock Registry constitutes an "electronic data compilation from which information can be obtained" within the meaning of 1 M.R.S. § 402(3).

10. Approximately 20,000 documents comprising approximately 80,000 pages are recorded at the Hancock County Registry of Deeds in an average year.

11. In order to maintain its website and continue to offer the service it provides, MacImage needs to obtain digital copies and indexes of all of the documents filed at the Hancock Registry. At $1.50 per page this could cost MacImage $120,000 per year ($240,000 for two years).

12. The Hancock County Registry scans the documents recorded in the Registry, indexes those documents in an electronic data compilation, and creates an electronic grantor/grantee index whether or not it receives any requests for copies from any members of the public. Stipulation ¶ 12.

13. It costs the Hancock Registry a certain amount to maintain and update its electronic data compilation containing digital information relating to the documents recorded in the Registry and associated indices. This amount includes costs for software, for computer equipment including servers, for

3

services provided by Aptitude Solutions (the contractor providing database software and the county website), and for staffing costs involved with scanning and indexing the documents.

14. However, once the documents have been scanned and the electronic index has been created and updated, the incremental cost of providing copies from the Registry's website (by allowing users to download digital images and/or index information) is zero.[2]

15. In contrast, providing copies at the Registry office would entail certain costs for printing the copies (ink and paper for paper copies, computer disks for electronic copies), equipment costs (printer, CD burner), and staff time spent in providing assistance to persons making requests.

16. Requiring MacImage to pay $1.50 per page on an ongoing basis for digital copies of recorded documents does not constitute "a reasonable fee to cover the cost of copying" within the meaning of the Freedom of Access Law, M.R.S. § 408(3)(A). Such a fee, costing MacImage approximately $120,000 per year for the copies it is seeking, is prohibitive and would constitute a constructive denial of access under the Freedom of Access Law if 1 M.R.S. § 408(3)(A) is applicable.

17. The Hancock Registry's electronic database would be capable of identifying any digital images that have been re-scanned since originally being entered and any digital images on which marginal notes have been added for

---

[2] At the time of MacImage's original request, the Hancock website was not configured to allow users to copy digital images except those which bore an electronic watermark identifying those images as "unofficial." In order to allow users to copy the original scanned documents without the watermark, the Registry needed to incur a one-time cost (in staff time and for services from Aptitude Solutions) to reconfigure its website to remove the watermark. The Registry chose to do that in order to comply with the TRO entered in this case.

4

indexing purposes (e.g., notation that a mortgage had been discharged). However, the database is not currently configured to allow such documents to be separately identified. Configuring the database to generate information identifying re-scanned or modified digital images or marginal notations would require the use of programming services provided by Aptitude Solutions at $175 per hour.

18. The $1.50 per page copying fee set by the County Commissioners at their October 15, 2008 meeting was based on the recommendation of the Register, Joint Ex. 12. With respect to copies from the County's website, the $1.50 per page represented a continuation of the same fee that had previously been charged.

19. No information was presented at the County Commissioners' October 15, 2008 meeting to justify the reasonableness of the $1.50 per page fee.

20. The $1.50 per page fee for digital copies does not bear any relationship to the cost of providing digital copies, nor does it bear any relationship to the expenses incurred to run the Hancock County Registry of Deeds.

21. In addition to charging fees for copying, Hancock County also charges fees for recording documents in the Registry. The recording fees charged by the County Registry are more than sufficient to cover the entire expense of running the Hancock Registry and provide additional revenues to the County to pay for other county activities. Any revenues received by the Registry from charging for copies therefore provides the County with additional revenues that can be used by other county agencies.

22. The County's position at trial was that the $1.50 per page fee was reasonable considering the County's budgetary needs and revenue sources as a whole

5

(not just the budgetary needs and revenue of the Registry) and specifically considering such issues as the tax burden on county residents. Attempting to determine the reasonableness of a copying fee if the fee is to be determined by the County's overall budgetary needs and revenue sources is a non-justifiable political question that courts are ill equipped to decide. *See, e.g., Wright v. Department of Defense & Veterans Services*, 623 A.2d 1283, 1285 (Me. 1993).

23. The court cannot directly compare the $1.50 per page copying fee imposed by the Hancock County Registry with the fees charged by other county registries. Many counties charge less, at least to persons who regularly obtain copies; at least one county appears to charge more.[3]

A. Status of MacImage Requests

Although the specific Freedom of Access request at issue in this case was made on September 29, 2008, the court understands that MacImage has already received the information it seeks up through the time of trial. Some of that material was obtained because the County, for some period of time, left up a webpage from which digital information could be downloaded and MacImage used that page to access the information it sought. Since then, MacImage has received the information it has been seeking because of the TRO entered in this case.

As a result, the specific Freedom of Access request at issue in this case – for electronic data as of September 29, 2008 – is technically moot. However, MacImage's September 29, 2008 request expressly states that MacImage intends to file identical

---

[3] Many of the other counties, unlike Hancock, impose an annual or monthly fee on users who subscribe to the county registry's website. Once that fee has been paid, however, a number of other counties impose a lower copying fee, often on a per document (rather than per page) basis. At least one other county (York) appears to impose higher fees than Hancock because it reportedly imposes a $1.50 per page copying fee plus a monthly subscription fee.

6

requests on an ongoing basis, and both parties have treated this case as involving a continuing request. There is a continuing controversy between the parties as to this request. Under these circumstances, the court will focus on MacImage's request for a declaratory judgment (Count III of its complaint) in order to resolve this controversy.

## B. Copying Costs

In view of the prior findings, the issue in this case reduces to two questions. The first is whether 1 M.R.S. § 408(3)(A) governs the fee that may be imposed to obtain digital copies of documents recorded in the Hancock County Registry or whether that fee is governed by 33 M.R.S. § 751(14). The second is whether, if 33 M.R.S. § 751(14) governs, that statute authorizes the County to charge the $1.50 per page fee at issue in this case.

Section 408(3) of the Freedom of Access Law, 1 M.R.S. § 408(3), enacted in 2004, provides in pertinent part as follows:

> Except as otherwise specifically provided by law or court order, an agency or official having custody of a public record may charge fees as follows.
>
> A. The agency or official may charge a reasonable fee to cover the cost of copying . . . . [4]

Section 751(14) of Title 33, enacted in 1963, provides as follows:

---

[4] Prior to 2004, the cost of copying was governed by language enacted in 1976, which provided in pertinent part:

> Except as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record; provided that, whenever inspection cannot be accomplished without translation of mechanical or electronic data compilations into some other form, the person desiring inspection may be required to pay the State in advance the cost of translation . . . and provided further that the cost of copying any public record to comply with this section shall be paid by the person requesting the copy.

P.L. 1975, ch. 758, 107th Legislature, 1st Special Session (1976).

7

Except as provided in any other provision of law, registries of deeds shall receive the following fees for

\* \* \* \* \* \* \* \* \* \*

14. <u>Abstracts and copies</u>. Making abstracts and copies from the records, a reasonable fee as determined by the county commissioners . . . .

As the County points out, both of these provisions contain language deferring to other provisions of law and therefore the provisions are potentially circular. As a matter of textual analysis, it can be argued that the language in § 408(3) of the Freedom of Access Law – which defers where "specifically" prohibited by law - leads to the conclusion that 33 M.R.S. § 751(14) should control because the latter statute covers a more specific subject (records in registries of deeds) than the Freedom of Access Law generally.[5]

Assuming that § 751(14) controls, however, does not end the inquiry because there remains the question of whether charging $1.50 per page for the access in bulk requested by MacImage is a "reasonable" fee under that statute. The term "reasonable" in § 751(14) is susceptible of different interpretations and could mean any of the following: (1) the reasonable cost of copying any given document – an interpretation consistent with the Freedom of Access Law; (2) any amount that the County Commissioners might deem reasonable in view of the county's revenue needs, as argued by Hancock County here; or (3) something in between – such as a fee that covers more than the incremental cost of copying but is at least based on the overall copying expenses incurred by the registry.

---

[5] The County argues that a 2004 report from a Committee to Study Compliance with Maine's Freedom of Access Law further supports this conclusion. The court disagrees. That report (Exhibit 10 to defendants' supplemental trial brief dated June 11, 2009) recommends that the registry of deeds should be exempt from a recommended $.20 per page charge for copies under the Freedom of Access Law. However, the Legislature did not adopt the $.20 per page recommendation and never acted on any suggestion to exempt registry documents.

8

The legislative history of section 751(14) does not support the very broad interpretation of reasonableness argued by Hancock County. As far as the court is aware, there was no statement of fact provided for the language now contained in § 751(14) when it was first enacted. *See* Senate Amendment "A" to L.D. 1320, 101st Legis. (1963). The debate refers to the fact that county registries were now making copies by photostats and

> it is a matter here for the county commissioners to establish a fee in order to get the necessary costs back for doing these documents. It will probably be a nominal cost of fifty cents or a dollar for each of these documents.

Legislative Record, May 1, 1963 at 1661 (remarks of Rep. Rust) (annexed as Exhibit 15 to Defendants' Supplemental Trial Brief dated June 11, 2009).

This language, if anything, would appear to support the conclusion that a reasonable fee under § 751(14) would be consistent with the cost of copying under the Freedom of Access Law. Moreover, there is absolutely no indication that the Legislature intended to give county commissioners standardless discretion to set any fee they deemed reasonable considering the county's overall budget needs, tax burden, and revenue sources.

The language in § 751(14) has been revisited and re-enacted without change by the Legislature on several occasions since 1963. *See, e.g.,* P.L. 1971, ch. 321; P.L. 1991, ch. 497 § 8. Hancock County argues with some force that if § 751(14) were interpreted to be identical to § 408(3)(A) of the Freedom of Access Law, there would be no reason for the Legislature to have kept § 751(140) in effect.

The court concludes therefore that while § 408(3)(A) of the Freedom of Access Law is designed to require reimbursement only of the incremental cost of providing copies – in order to make public records as easily accessible as possible – a somewhat

9

different standard should apply to the fee for providing copies of documents recorded in the registry of deeds pursuant to 33 M.R.S. § 751(14). Under § 751(14) a county registry can charge a fee designed to cover any costs reasonably related to providing copies – including some portion of website costs,[6] time expended by registry staff and outside contractors in configuring Hancock's database to allow copying, and time spent by registry staff and outside contractors in administering and maintaining the ability of Hancock's database to provide copies.

In the court's view, this would allow the County, if it chose, to charge a subscription fee for the use of its website. It would also be reasonable for the County to offer bulk access at a reduced rate as compared to individual copies, but the court does not find on this record that the Freedom of Access Law or 33 M.R.S. § 751(14) necessarily requires such an option. The court has some doubt that the County can reasonably impose a per page fee as opposed to a per document fee, but it is possible that the County could make a showing that its costs increase by page rather than by document or by request. So long as the fees imposed by the County for copying bear a reasonable relationship to the cost of providing copies, the County is entitled to charge those fees. This is true regardless of whether the revenues the Registry receives from recording fees are otherwise more than sufficient to cover the entire operating expenses of the Registry. Any surplus revenues obtained from recording fees can be used by the County for any purpose.

In reaching this result, the court is aware that county commissioners in other Maine counties may also be interpreting § 751(14) as an authorization to set copying fees in consideration of the county's overall revenue needs, tax burden, and other

---

[6] If Hancock County maintains its website both to allow titles to be searched without coming to the registry office and to allow copies to be made, then website costs should be allocated between these two functions.

10

revenue sources. The Legislature would be entitled to authorize county commissioners to set fees in this fashion. However, the court concludes that the existing statutory scheme does not constitute that authorization.

For the foregoing reasons, Hancock County's current excessive copying charges are not authorized under 33 M.R.S. § 751(14) and therefore imposing such fees constitutes a denial of MacImage's right to copy public records under the Freedom of Access Law. This decision is without prejudice to the Hancock County Commissioners' ability in the future to set a reasonable fee for copying consistent with this order.

With respect to the particular issue of MacImage's request for electronic copies of documents and grantor-grantee index information that have been re-indexed, re-scanned, or annotated, MacImage did not make a separate Freedom of Access request that would have required the Hancock Registry to separately identify those images or documents. In providing copies of all the re-indexed, rescanned, or annotated documents without separately identifying them, Hancock County has technically complied with MacImage's request.

Given the court's findings above – that such documents are not currently identified and that a new software query would have to be devised to identify those documents – the court concludes that a request that re-indexed, re-scanned, or annotated documents be separately identified and provided would required translation of data in the Registry's existing database. As to such a request, therefore, the Hancock Registry may charge a fee to cover the actual cost of translation. 1 M.R.S. § 408.

The entry shall be:

A declaratory judgment is issued that defendant is required under the Freedom of Access Law to provide electronic copies of the documents requested in plaintiff's September 29, 2008 request without charging $1.50 per page. Defendant has the option

11

of providing such copies either in the form of a bulk transfer (charging for any staff time involved) or by allowing plaintiff to make those copies off the website. If plaintiff pays for the actual translation costs involved, defendant shall separately identify and provide copies of electronic images that have been re-indexed, re-scanned, or annotated. This ruling is without prejudice to the Hancock County Commissioners' ability to meet in the future and determine a reasonable fee for copies consistent with this order.

The clerk is directed to incorporate this order into the docket pursuant to Rule 79(a).

DATED:      September __/__, 2009

Thomas D. Warren
Justice, Superior Court

SIGMUND SCHUTZ ESQ
PO BOX 9546
PORTLAND ME 04112

*Pl.*

COURTS
nd County
ox 287
e 04112-0287

ANTHONY PELLEGRINI ESQ
PO BOX 1401
BANGOR ME 04402

*Defendant*